# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MICHAEL W. MACH,

    Plaintiff,

    v.

WILL COUNTY SHERIFF,

    Defendant.

No. 06 C 3378
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is an age discrimination case filed by Michael W. Mach against his employer, the Sheriff of Will County. Mach is a deputy sheriff and has been for nearly twenty years. He turned 50 years old in August, 2007.

Mach alleges several complaints but now "is relying solely upon his transfer from Traffic to Patrol." He was, prior to September, 2003, assigned to the Traffic Division at all relevant times. In late 2003 to early 2004, the deputies in the Traffic Division were Claxton, Albin, Mach, Barton, Kirsch and Wendt. Mach's supervisor was Raymond Horwath. When Mach left Traffic, his replacement was Michael Johnson, then 47. Mach's duties were assumed by Charles Albin, then 39.

Horwath thought that Mach's work in 2004 was substandard "to what he had been doing a few years prior," and Horwath's first major problem with Mach's performance was in September of 2003. Mach, who does not believe his performance was ever deficient, testified that Horwath had never told him his performance had been deficient and that Horwath usually

raised Mach's self-evaluation scores.[1]  There were, however, time when Mach was disciplined in the year before his transfer.

On September 4, 2003, Horwath issued a memo saying that traffic deputies would be temporarily assigned to patrol for budget reasons.  After being assigned to patrol for three consecutive days, Mach left his traffic equipment at Horwath's door (on September 11th) with a note stating he felt he had been transferred to patrol.  After a discussion with Horwath, Deputy Chief Moss and Chief Deputy Maher agreed to transfer Mach temporarily to patrol, doing this because of Mach's note.  Mach was later transferred back to traffic.  Horwath felt, unsurprisingly, that Mach had "overstepped his bounds."  He thought Mach's actions constituted insubordination.  The Sheriff had told Maher that he was transferring Mach back to traffic and he wanted to give Mach a "second chance," despite the objections from Horwath, Moss and Maher.

On February 11, 2004, Horwath issued Mach a written reprimand for actions occurring on three separate days in the preceding weeks, including failure to adhere to directives and unsatisfactory performance.  After a formal investigation, Horwath issued a written warning for violation of rules.  (Mach objects to the phrase "formal investigation" because Horwath was "not in internal affairs and had no authority to conduct a formal investigation."  I overrule the objection both because it is trivial and because Mach provides no citation to any departmental

---

[1]In his deposition, Mach was asked if it was "your belief that . . . Horwath wanted you out of the Traffic Division solely because of age?"  Mach replied, "What else could it be?"  It is rare for a plaintiff to prevail if this is his sole grounds for believing there is age discrimination (or, indeed, any kind of discrimination) because it means that plaintiff has little to offer beyond the prima facie case.  On the other hand, plaintiffs are not lawyers and do not understand how unsatisfactory this answer is in the context of litigation.

regulation that deprives a supervisor of the ability to formally investigate the conduct of officers under their command.)

On February 19, 2004, Horwath assigned Mach to deal with a complaint about speeding vehicles in front of a mobile home park where senior citizens were present and instructed him to fill out a complaint form and return it by February 25th. Plaintiff failed to submit his report at the allotted time, though he denies that this was a violation of rules. The matter led to an administrative interview with Mach, his union representative, and Horwath (on March 8th), followed by a predisciplinary hearing with the same persons (on March 25th), followed by a recommendation from Horwath that Mach be suspended for one day without pay (April 5th), and ending with a notice of suspension on April 19th.

On May 7th, Horwath issued a written memorandum advising that further discipline could result in Mach's transfer out of traffic. Mach admits receiving the memo but does not appear in his deposition to recall what it said.

On August 31st the end came. Horwath recommended that, because of unsatisfactory job performance, Mach be removed from traffic. Moss told Mach, the next day, that he was out of traffic. Albin took Mach's shift. Mach was replaced by Johnson.

Horwath perceived difficulties with Mach's enforcement practices, including issuing written warnings to a lot of drivers who were 20 mph over the limit, handling of crashes, issuing too few DUI charges, and Mach's general methodology and speed calculations. Maher testified that Horwath had complained about Mach's "passive aggressive behavior" and "reluctance to follow directions." Other watch commanders felt Mach was "oppositional to taking orders."

Mach's response to much of Horwath's complaints about him is simply an assertion that Horwath did not tell Mach his performance was deficient, though the Sheriff himself did raise the issue of a warning ticket issued for 93 mph in a 55 mph zone. In response to a Statement of Fact that "Sheriff Kaupa further advised Plaintiff that if his overall job performance and enforcement production did not increase that he would be removed from the traffic division," Mach's response is "Mach testified that Horwath never told him his performance had been deficient." I find these denials of uncontested facts to be insufficient, if not evasive. The pattern of vague denial with the only specific detail being the failure of Horwath to discuss the matter is not sufficient to constitute a denial. The hollowness of these denials is demonstrated by the rote use of the formulaic response when the allegation is not about what Horwath said but what the Sheriff himself said to Mach.

Mach was assigned in July of 2004 to assist a local department with the investigation of a motorcycle crash. In September 2004, the local department inquired about the status of the investigation and, after a few days, Horwath found no report or work done and had to reassign the matter to another deputy. The written warnings against Mach had not dropped and his DUI citations had not increased. Mach's evaluation score for 2003 was the lowest in the traffic division. His number was 2.86. The next lowest number was 3.28, and the deputy with that score was also transferred from traffic. Further, in one four-month period, Mach issued only a single DUI citation and 14 warnings for speed of more than 20 mph over the limit.

The principal defense to the charge of discrimination is that Mach was not performing his job satisfactorily. At the very least, it is undisputed that this was the honest opinion of those who transferred him and particularly that of the Sheriff, who made the decision to transfer and had

4

shown both leniency and a realization that job performance was not up to par. Both of those attitudes are implicit in the idea that Mach should have a "second chance."

There is no similarly situated, but younger, individual who was treated better than Mach and no comparator is offered. The only support for Mach's claim is a statement (denied by its alleged maker, but assumed to be true) that Mach should be transferred to patrol because he was reaching the age of retirement. In light of the record as it stands, I do not believe a reasonable finder of fact could conclude, on the basis of this statement made seven months before transfer, that the reason Mach was, in fact, transferred had anything to do with his age. *E.g. Smith v. Potter*, 445 F.3d 1000, 1008 (7th Cir. 2006) ("self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record") (citation omitted). This *might* be enough if the statement had been uttered by the decision maker, but it was not the Sheriff who spoke these words; it was a subordinate whose efforts to transfer Mach had been refused by the Sheriff, demonstrating that the Sheriff would make up his own mind on what was to be done with Mach. *See generally La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir. 1984); *accord Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449 (7th Cir. 1991).

Finally, no case is made that the transfer was materially adverse to Mach. Under Title VII, the denial of a promotion *is* an actionable adverse employment action, but the denial of a purely lateral transfer is not. There is no difference in salary or benefits between Traffic and Patrol. Mach claims a loss of prestige, but he offers no proof of this either in the eyes of the public (which may in fact regard Patrol as more prestigious than Traffic) or the eyes of professional police officers outside or within his department. Prestige is unquantifiable and it is

difficult to see how it can be a "material" adverse action. *Pegram v. Honey well, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (absent an objective showing of a loss in compensation, duties, or benefits, evidence that solely establishes a loss of prestige is insufficient to establish an adverse employment action). The Fifth Circuit, which has dealt with the issue of prestige in the context of law enforcement more than any other circuit, has held that a transfer can be a demotion if the new position proves "objectively worse." *Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007) (finding significant objective facts relevant to the question of whether the denial of a position with the Rangers was the equivalent of the denial of a promotion) (*citing Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (recognizing as demotions the transfers of two police officers from intelligence unit to night uniformed patrol positions); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) (transfers of two deputy sheriffs from the law enforcement division to positions as jail guards could be considered demotions)). In each of the cases in which there was enough evidence sufficient to raise a genuine issue of material fact as to whether a transfer or non-selection was an adverse employment action, the plaintiff had offered evidence that the desired position was "objectively better." *Alvarado*, 492 F.3d at 614. The relevant factors include whether the position entails an increase in compensation or other tangible benefits; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious. *Id.* Mach has not presented sufficient objective evidence that the patrol is objectively better than traffic. Accordingly, he has failed to allege the requisite adverse employment action.

For the foregoing reasons, the Sheriff's motion for summary judgment is granted.


ENTER:

_____
James B. Zagel
United States District Judge

DATE: July 1, 2008